MASON BARNEY (*pro hac vice*)
SONAL JAIN (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
200 Park Avenue
Seventeenth Floor
New York, NY 10166
Telephone: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com
sjain@sirillp.com

DANIEL O. HERRERA (*pro hac vice*)
NICKOLAS J. HAGMAN (*pro hac vice*)
**CAFFERTY CLOBES
MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

DAVID K. LIETZ (*pro hac vice* filed)
**MILBERG COLEMAN BRYSON
 PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Avenue NW,
Suite 440
Washington, DC 20015
Phone: (866) 252-0878
Fax: (202) 686-2877
dlietz@milberg.com

BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
ALEX TRAMONTANO (276666)
**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

[additional counsel listed on signature page]

# THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CALIFORNIA PIZZA KITCHEN DATA BREACH LITIGATION<br><br>This Document Relates To:<br>All Actions | Master File No. 8:21-cv-01928-DOC-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**DATE:**      **June 13, 2022**<br>**TIME:**      **8:30 a.m.**<br>**COURTROOM:**  **10 A**<br>**JUDGE:**     **Hon. David O. Carter** |

1
2

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................1

II.     STATEMENT OF FACTS ....................................................................1

III.    PROCEDURAL HISTORY ...................................................................2

IV.     THE SETTLEMENT TERMS ...............................................................4

    A.     Proposed Settlement Class ..........................................................4

    B.     Settlement Benefits – Monetary Relief .......................................4

        1.   Expense and Lost Time Reimbursement..........................4

        2.   Extraordinary Expense Reimbursement............................5

        3.   California Statutory Claim Benefit....................................5

    C.     Credit Monitoring.........................................................................5

    D.     Remedial Measures ......................................................................6

    E.     Class Notice and Settlement Administration................................6

    F.     Attorneys' Fees and Expenses......................................................7

    G.     Service Awards to Named Plaintiffs ............................................8

    H.     Release..........................................................................................8

V.      LEGAL ARGUMENT ...........................................................................9

    A.  The Settlement Satisfies Rule 23(a) .............................................10

        1.   The Settlement Class is Sufficiently Numerous. .............10

        2.   The Settlement Class Satisfies the Commonality Requirement.......11

        3.   Plaintiffs' Claims and Defenses are Typical. ..................11

        4.   Plaintiffs are Adequate Settlement Class Representatives. .............12

    B.     The Requirements of Rule 23(b)(3) Are Met for Purposes of
        Settlement......................................................................................12

    C.     The Court Should Preliminarily Approve the Settlement. ..................14

        1.   The Strength of Plaintiffs' Case ......................................15

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation ...................................................................................17

3. The Risk of Maintaining Class Action Status Through Trial...........19

4. The Amount Offered in Settlement ..................................................19

5. The Extent of Discovery Completed and the Stage of Proceedings......................................................................................20

6. The Experience and Views of Counsel ...........................................21

7. Governmental Participants. ............................................................22

8. The Reaction of the Settlement Class to the Settlement...................22

9. Lack of Collusion Among the Parties .............................................22

10. The Settlement Treats Settlement Class Members Equitably ..........23

D. The Court Should Approve the Proposed Notice Program .................23

E. Appointment of the Settlement Administrator ...................................25

F. Appointment of Settlement Class Counsel.........................................25

**VI. CONCLUSION.....................................................................................25**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591(1997)..........................................................................10, 14

*Calderon v. Wolf Firm*,
    No. SACV 16-1622-JLS(KESx), 2018 WL 6843723
    (C.D. Cal. Mar. 13, 2018)..............................................................20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
    973 P.2d 527 (Cal. 1999).................................................................16

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992)...........................................................9

*Cohorst v. BRE Props.*,
    No. 3:10-CV-2666-JM-BGS, 2011 WL 7061923
    (S.D. Cal. Nov. 9, 2011)..................................................................22

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974)..........................................................................23

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ......................................................10, 12

*Fox v. Iowa Health Sys.*,
    2021 WL 826741 (W.D. Wis. Mar. 4, 2021)...................................18

*Franklin v. Kaypro Corp.*,
    884 F.2d 1222 (9th Cir. 1989) ........................................................15

*G. F. v. Contra Costa Cty.*,
    No. 13-cv-03667-MEJ, 2015 U.S. Dist. LEXIS 100512
    (N.D. Cal. July 30, 2015)................................................................22

*Gautreaux v. Pierce*,
    690 F.2d 616 (7th Cir. 1982) ..........................................................14

*Gordon v. Chipotle Mexican Grill, Inc.*,
    2019 WL 6972701, (D. Colo. Dec. 16, 2019)................................18

*Gribble v. Cool Transports Inc.*,
   No. CV 06-4863 GAF (SHx), 2008 WL 5281665
   (C.D. Cal. Dec. 15, 2008) ...................................................................14

*Grimm v. American Eagle Airlines, Inc.*,
   No. LA CV 11-00406 JAK(MANx), 2014 WL 1274376
   (C.D. Cal. Sept. 24, 2014)..................................................................19

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   No. 08 Civ. 6060 (RMB) (RLE), 2010 U.S. Dist. LEXIS 71996
   (S.D.N.Y. June 25, 2010)...................................................................18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .....................................................12, 15

*Holly v. Alta Newport Hospital*,
   No.2:19cv07496, 2020 WL 1853308 (April 10, 2020) .....................11

*Hudson v. Libre Technology Inc.*,
   No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060
   (S.D. Cal. May 13, 2020)...................................................................23

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. 2020) ..............................................15

*In re Adobe Sys., Inc. Priv. Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..............................................16

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)......................................................13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .............................................................15

*In re Brinker Data Incident Litig.*,
   No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508
   (M.D. Fla. Apr. 14, 2021).................................................................19

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .............................................................24

*In re LinkedIn User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)...................................................................13

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................8

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................14, 23

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   2017 U.S. Dist. LEXIS 75455 (D. Minn. May 17, 2017)..................................20

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-02583-TWT, 2017 U.S. Dist. LEXIS 221736
   (N.D. Ga. Sept. 22, 2017) ............................................................................20

*In re the Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-MD-02583-TWT, 2016 WL 6902351
   (N.D. Ga. Aug. 23, 2016)............................................................................11

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   266 F. Supp. 3d 1 (D.D.C. 2017) ...................................................................18

*In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*,
   928 F.3d 42 (D.C. Cir. June 21, 2019)............................................................18

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) .................................................................12, 13

*Korea Supply Co. v. Lockheed Martin Corp.*,
   63 P.3d 937 (Cal. 2003) ..............................................................................16

*Linney v. Cellular   Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) .................................................................18, 21

*Meyer v Portfolio Recovery Associates*,
   707 F.3d 943 (9th Cir. 2012) ........................................................................12

*Murillo v. Pacific Gas & Elec. Co.*,
   266 F.R.D. 468 (E.D. Cal. 2010) ...................................................................14

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)...................................................................22

*Norton v. Maximus, Inc.*,
    2017 WL 1424636 (D. Idaho Apr. 17, 2017) .....................................22

*Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc.*,
    303 F.R.D. 337 (E.D. Cal. 2014) .......................................14

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985).......................................24

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) .......................................8

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) .......................................11

*Reyes v. Experian Info. Sols., Inc.*,
    No. SACV1600563AGAFMX, 2020 WL 466638
    (C.D. Cal. Jan. 27, 2020) .......................................14

*Smith v. Triad of Ala., LLC*,
    No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574
    (M.D. Ala. Mar. 17, 2017) .......................................19

*Stasi v. Inmediata Health Grp. Corp.*,
    501 F. Supp. 3d 898 (S.D. Cal. 2020).......................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016).......................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011).......................................11

*Yahoo Mail Litig.*,
    2016 WL 4474612 (N.D. Cal. Aug. 25, 2016) .......................................8

**Statutes**

Cal. Civ. Code § 1798 .......................................16

Fed. R. Civ. P. 23 ....................................... passim

**Other Authorities**

4 Newberg on Class Actions § 11.41 (4th ed. 2002)................................................10

Manual for Complex Litigation (Fourth) (2004) § 21.63...................................9, 10

# I.    INTRODUCTION

Plaintiffs submit this Motion for Preliminary Approval of Class Action Settlement and Memorandum in Support. Defendant California Pizza Kitchen, Inc. ("CPK," and "Defendant") does not oppose certification of the Settlement Class solely for purposes of settlement.[1] The settlement is fair, reasonable and adequate, and the Court should preliminarily approve it so notice may be issued to the Class.

# II.    STATEMENT OF FACTS

This matter concerns a putative class action arising out of an alleged Data Incident CPK discovered on or about September 15, 2021. Representative Plaintiffs allege, but CPK denies, that, as a result of the Data Incident, unauthorized users accessed Representative Plaintiffs' and CPK's current and former employees' personal identifying information ("PII"), including names and Social Security numbers. *See Gilleo, et al. v. California Pizza Kitchen, Inc., et al*., No. 8:21-cv-01928, ECF No. 1 ("Compl."), ¶¶ 3-6.

In November 2021, following a forensic investigation, CPK sent notice of the Data Incident to approximately 103,767 individuals whose PII may have been subject to unauthorized access. CPK offered these individuals one year of free credit and identity monitoring services.  Representative Plaintiffs received their notice letters on or about November 15, 2021.  *Id*., ¶ 5.

Plaintiffs brought their class action lawsuits on behalf of all similar current and former employees whose PII CPK collected and maintained, but safeguarded inadequately. Plaintiffs in these Consolidated Cases asserted common law claims against CPK, including negligence, and violations of various state statutes, including , *inter alia*, California's Unfair Competition Law, Consumer Records Act, and Consumer Privacy Act. *Id*., ¶¶ 62-137.

---

[1]    Capitalized terms have the same definitions as in the Settlement Agreement and Release, dated May 2, 2022 ("Settlement Agreement" or "SA"), attached to the Declaration of Rachele R. Byrd in Support of Motion for Preliminary Approval of Class Action Settlement ("Byrd Decl.") as Exhibit 1.

### III.   PROCEDURAL HISTORY

There are five lawsuits pending in this Court arising from this Data Incident. Plaintiffs in the first four filed related cases, *Gilleo, et al. v. California Pizza Kitchen, Inc., et al.*, No. 8:2021-cv-01928-DOC-KES; *Morales v. California Pizza Kitchen, Inc.,* No. 8:21-cv-01988-DOC-KES; *Wallace et al. v. California Pizza Kitchen, Inc.*, No. 8:21-cv-01970-DOC-KES; and *Rigas, et al. v. California Pizza Kitchen, Inc.*, Case No. 8:21-cv-02004-DOC-KES, filed putative class actions alleging that CPK failed to adequately safeguard its current and former employees' (and their family members') electronically stored private information, and seeking monetary and equitable relief (the "Lawsuits" or "Consolidated Cases"). Each Consolidated Case names CPK as the sole Defendant, brings similar claims, and purports to represent the same putative nationwide class, or, in the alternative, state classes, of all persons whose PII was accessed during the Data Incident.

Subsequently, a fifth case, *Kirsten, et al. v. California Pizza Kitchen, Inc.*, No. 2:21-cv-09578-DOC-KES, was filed.[2] At the time the *Kirsten* case was filed, counsel for the first-four filed cases had already self-organized, and had agreed to work together cooperatively for the good of the putative class. Byrd Decl., ¶ 3. Plaintiffs' counsel for the first-four filed cases invited counsel for *Kirsten* into the group, but they declined and indicated that they preferred to file a leadership motion. *Id.*, ¶ 4.

Subsequently, plaintiffs' counsel in all five cases sought to consolidate the various cases. Counsel in the first-four filed cases sought consolidation to move the cases forward for the benefit of the class. Ultimately, all plaintiffs' counsel could not agree on a mutually acceptable consolidation stipulation, and counsel for the *Kirsten* plaintiffs simply stopped responding. *Id.*, ¶ 5.

---

[2] Thereafter, on December 17, 2021, more than three weeks after the first filed action, a similar class action was filed in Sacramento Superior Court under the caption *Andrews v. California Pizza Kitchen, Inc.*, No. 2021-00312816-CV.

Unwilling to let the cases languish, counsel for the first-four filed cases stipulated to consolidation of their four cases, noting in the stipulation the existence of the fifth related *Kirsten* case. *Id.*, ¶ 6; ECF No. 20 at 1, n.1. After the Court entered the stipulated order on February 15, 2022 and designated the Consolidated Cases as *In re California Pizza Kitchen Data Breach Litigation*, Master File No. 8:21-cv-01928-DOC-KES, the Parties to the Consolidated Cases (which did not include the Kirsten plaintiffs for the reasons noted above) agreed to explore settlement and scheduled a formal mediation. *Id.* Meanwhile, the *Kirsten* plaintiffs litigated their case separately, never again raising the issue of consolidation. CPK filed a motion to dismiss the *Kirsten* complaint, which this Court granted for lack of Article III standing with leave to amend, and the *Kirsten* plaintiffs then filed an amended complaint. *See Kirsten,* No. 2:21-cv-09578, ECF Nos. 34-35.

Prior to mediating, the Parties to the Consolidated Cases exchanged confirmatory discovery on a variety of topics, including applicable insurance coverage (which in this case, without revealing confidential information, was a wasting policy that was being eroded by litigation costs). The Parties selected Bruce A. Friedman, Esq. of JAMS, a well-regarded private mediator with considerable experience mediating data breach class actions, to preside over the mediation, and exchanged briefs prior to the mediation. Byrd Decl., ¶ 7.

At the all-day mediation on March 10, 2022, the parties spent the entire day negotiating the material terms of a resolution of the class claims prior to reaching an impasse. *Id.*, ¶ 8. The parties did not discuss attorneys' fees or service awards at this first mediation session and instead returned for a second mediation session on March 15, 2022. At the second session, the parties reached agreement on the material terms of class-wide relief, then spent the remainder of that second session negotiating the issues of attorneys' fees, costs and service awards. After several hours, the parties reached agreement on all material terms of this settlement. *Id.*

The parties to the Consolidated Cases immediately apprised the Court of the

settlement, and the Court stayed all proceedings in the Consolidated Cases pending the filing of a motion for preliminary approval by May 2, 2022. ECF No. 33.  That same day, plaintiffs' counsel in the *Kirsten* case improperly filed a leadership motion in the lead *Gilleo* case, despite having no standing to do so as a non-party to the Consolidated Cases. *See* ECF No. 31. The motion baselessly accused counsel in the Consolidated Cases of collusion and reverse auction. *Id*. After two hearings, this Court determined that the proper course of action was to review the settlement before considering any of the *Kirsten* plaintiffs' accusations. ECF No. 41.

## IV.    THE SETTLEMENT TERMS

### A.    Proposed Settlement Class

The settlement will provide relief for the following Settlement Class: "All persons who were sent notice of the Data Security Incident announced by defendant on or about November 15, 2021." SA, ¶ 1.  The settlement also provides for a California Settlement Subclass, defined as follows: "All persons residing in California who were sent notice of the Data Security Incident announced by defendant on or about November 15, 2021." *Id*. The Settlement Class and California Settlement Subclass are estimated to include 103,767 and 30,781 individuals, respectively. *Id*.

### B.    Settlement Benefits – Monetary Relief

The settlement negotiated on behalf of the Class provides for three separate forms of monetary relief: (1) reimbursement of ordinary expenses and lost time up to $1,000 per Class Member; (2) reimbursement of extraordinary expenses up to $5,000 per Class Member, and; (3) California Statutory Claim benefits of $100 per California Settlement Subclass member. There is no aggregate cap on these benefits.  SA, ¶ 3.

#### 1.    Expense and Lost Time Reimbursement.

The first category of payments is designed to provide reimbursement for documented, ordinary and unreimbursed out-of-pocket expenses related to the Data

Incident and to compensate Settlement Class members for time spent dealing with the effects of the Data Incident. Ordinary expense reimbursements can be claimed at up to $1,000 per Class Member. SA, ¶ 3(a).

Notably, this category of reimbursements specifically includes up to three hours of lost time spent dealing with any effects of the Data Incident, compensated at $20 per hour. Reimbursable ordinary expenses also include: (i) unreimbursed costs to obtain credit reports; (ii) unreimbursed fees relating to a credit freeze; (iii) unreimbursed card replacement fees; (iv) unreimbursed late fees; (v) unreimbursed over-limit fees; (vi) unreimbursed interest on payday loans taken as a result of the Data Incident; (vii) unreimbursed bank or credit card fees; (viii) unreimbursed postage, mileage, and other incidental expenses resulting from lack of access to an existing account; (ix) unreimbursed costs associated with credit monitoring or identity theft insurance purchased prior to the Effective Date, with certification that it purchased primarily as a result of the Data Incident. *Id.*, ¶ 3(b).

### 2. Extraordinary Expense Reimbursement.

The second category provides reimbursement for documented, unreimbursed out-of-pocket losses due to identity theft, up to $5,000 per Settlement Class Member, incurred between September 15, 2021, through and including the end of the Claims Deadline. SA, ¶ 3(c).

### 3. California Statutory Claim Benefit.

In addition to the above benefits, California Settlement Subclass members are eligible for a separate, California statutory damages award of $100. This benefit is subject to the $1,000 cap for ordinary expenses and lost time reimbursement, but is available to all Subclass members who file a claim. SA, ¶ 3(d).

### C. Credit Monitoring

In addition to the cash benefits outlined above, <u>all</u> Settlement Class members will have the opportunity to claim two years (24 months) of three-bureau credit monitoring, which includes a credit report at sign-up, credit monitoring, identity

restoration, and up to $1 million in identity theft insurance (consistent with the 12 months of single bureau monitoring offered by CPK as part of its incident response). For Settlement Class members who selected and enrolled in the 12 months of identity monitoring previously offered by CPK, the credit monitoring offered under this settlement shall be in addition to that period.  SA, ¶ 3(e).

### D. Remedial Measures

As part of the settlement, CPK has also agreed to maintain certain business practices and remedial measures it recently implemented ("Business Practice Commitments") for a period of three (3) years following the Effective Date. These Business Practice Commitments are designed to include continuous threat assessment processes to maintain CPK's security posture and to provide protection against threats now and in the future, specifically with respect to the PII of current and former employees, and include the following:

(a) Endpoint protection: Ensure implementation of endpoint security measures, including appropriate implementation of endpoint security applications, patching mechanisms, logging and alerting.

(b) Enhanced password protection: Require users to employ more complex account passwords, and to change those passwords on a regular basis.

(c) Multi-factor authentication: Require multi-factor authentication in order to gain external access to email servers or systems located on CPK's networks.

(d) Cybersecurity training and awareness program: Enhanced internal training and education for all employees in order to better enable them to identify potential security threats.

All costs associated with implementing the Business Practice Commitments will be borne by CPK separate and apart from the relief afforded to Settlement Class members.  SA, ¶ 6.

### E. Class Notice and Settlement Administration

CPK also will pay for Notice, separate and apart from any funds available to

Settlement Class members. SA, ¶ 7.  Notice will be given to the Settlement Class via individual notice, which will be given primarily by mailing the Postcard Notice, attached to the Settlement Agreement as Exhibit B, to the postal addresses associated with the Settlement Class members. Byrd Decl. Ex. 3 (Declaration of Cameron R. Azari on Notice Plan ("Azari Decl.")), ¶¶ 15-18. A Long Notice, attached to the Settlement Agreement as Exhibit C, will also be posted on the settlement website, along with other important documents such as the Settlement Agreement and the motions for final approval and for attorneys' fees and expenses. *Id.*, ¶ 19. The notice documents are clear and concise and directly apprise Settlement Class members of all the information they need to know to make a claim or to opt-out or object to the settlement. Fed. R. Civ. P. 23(c)(2)(B). Furthermore, a toll-free number with interactive voice response, FAQs, and an option to speak to a live operator will be made available to address any inquiries. Azari Decl., ¶ 20.

Moreover, Defendant has retained Epiq Class Action and Claims Solutions, Inc. ("Epiq"), a nationally recognized and well-regarded class action settlement administrator, to serve as Settlement and Claims Administrator, subject to the Court's approval. *See* Byrd Decl., ¶ 18 & Ex. 3. The Settlement Administrator has estimated that notice and administration costs will total approximately $103,000. Azari Decl. ¶ 22.

**F.    Attorneys' Fees and Expenses**

Plaintiffs will also separately seek an award of attorneys' fees not to exceed $800,000, which includes reimbursement of their reasonable costs and litigation expenses incurred. SA, ¶ 5(a).  This amount represents less than 25% of an extremely conservative estimated value of this settlement. Byrd Decl., ¶ 19. If just 2% of the Settlement Class claims the $1,000 in ordinary losses, that would amount to $2,075,340.  *Id.*  If just 5% of California Settlement Subclass members claim their $100, that is $153,905.  *Id.*  And even conservatively valuing credit monitoring at $15 per month, two years thereof is worth $360 per Settlement Class

member; if just 4% of the Settlement Class claims this benefit, the total will be $1,494,245.  *Id.*  Adding these numbers together, this settlement has a conservative value of over $3.7 million, and the $800,000 in combined fees and expenses is approximately 21% of the value of the settlement.[3]  *Id.*  Defendant has agreed to take no position with regard to the fees motion.  SA, ¶ 5(a).

Class Counsel's fee request is well within the range of reasonableness for settlements of this nature and size. This Court recently stated that "25% [is] considered the benchmark" in the Ninth Circuit. *Pauley v. CF Ent.*, 2020 WL 5809953, at *3 (C.D. Cal. July 23, 2020), *citing Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000). In fact, the Ninth Circuit has found attorneys' fees awards of 1/3 of the fund to be reasonable. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of total recovery).

## G.    Service Awards to Named Plaintiffs

Plaintiffs in this case have been vital in litigating this matter, including providing their personal information to proposed Settlement Class Counsel. Plaintiffs have been personally involved in the case and support the Settlement. Byrd Decl., ¶ 20. Plaintiffs will separately petition the Court for awards of $2,000 each in recognition of the time, effort, and expense they incurred pursuing claims that benefited the Settlement Class.   This amount is presumptively reasonable and below amounts commonly awarded in settled class action cases. *See, e.g.*, *In re Pauley*, 2020 WL 5809953, at *4 (this Court granted "class representative enhancement fees in the amount of $5,000 each to Plaintiffs," finding that amount to be "presumptively reasonable"); *Yahoo Mail Litig.*, 2016 WL 4474612, at *11 (N.D. Cal. Aug. 25, 2016) ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark [for service awards].").

## H.    Release

---

[3]    The expected lodestar calculation will further support the reasonableness of the fees requested.

-8-

Upon entry of the Final Approval Order, Plaintiffs and the Settlement Class will be deemed to have fully and finally released CPK. "Released Claims" are limited only to claims, "whether known or unknown … that concern, refer or relate to the cybersecurity incident announced by CPK on or about November 15, 2021, and all other claims arising out of th[at] cybersecurity incident …." SA ¶ 9. Released Claims shall not apply to any litigation or claim not related to or arising out of the cybersecurity incident. The Release shall not include the claims of Settlement Class members who timely exclude themselves.

## V.   LEGAL ARGUMENT

Plaintiffs bring this motion pursuant to the Federal Rules of Civil Procedure, rule 23(e), under which court approval is required to finalize a class action settlement. Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement followed by (2) dissemination of court-approved notice to the class and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the settlement's fairness, adequacy, and reasonableness. Manual for Complex Litig. (Fourth) (2004) § 21.63.

Here, Plaintiffs request the Court take the first step, and grant preliminary approval of the proposed Settlement Agreement.  Federal courts strongly favor and encourage settlements, particularly in class actions and other complex matters where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); 4 Newberg on Class Actions § 11.41 (4th ed. 2002) (citing cases).

The Manual for Complex Litigation (Fourth) advises that in cases presented for both preliminary approval and class certification, the "judge should make a preliminary determination that the proposed class satisfies the criteria." § 21.632.

Because a court evaluating certification of a class action that has settled is considering certification only in the context of settlement, the court's evaluation is somewhat different than in a case that has not yet settled. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In some ways, the court's review of certification of a settlement-only class is lessened: as no trial is anticipated in a settlement-only class case, case management issues need not be addressed. *See id*. Other certification issues, however, such as "those designed to protect absentees by blocking unwarranted or overbroad class definitions," require heightened scrutiny in the settlement context "for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id*.

Plaintiffs here seek certification of a Settlement Class of 103,767 individuals and consisting of: "All persons who were sent notice of the Data Security Incident announced by defendant on or about November 15, 2021." SA, ¶ 1. In addition, the settlement creates a California Settlement Subclass of 30,781 individuals and consisting of: "All persons residing in California who were sent notice of the Data Security Incident announced by defendant on or about November 15, 2021." *Id*.

As outlined below, the Court should certify the proposed classes for settlement purposes and preliminarily approve the Settlement.

**A.   The Settlement Satisfies Rule 23(a).**

Before assessing the parties' settlement, the Court should first confirm the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litig. (Fourth), § 21.632. The requirements are well known: numerosity, commonality, typicality, and adequacy—each of which is met here. Fed. R. Civ. P. 23(a); *Ellis v. Costco Wholesale Corp*., 657 F.3d 970, 979–80 (9th Cir. 2011).

**1.    The Settlement Class is Sufficiently Numerous.**

Courts find numerosity where there are so many class members as to make

joinder impracticable. *See* Fed. R. Civ. P. 23(a)(1). Generally, Courts will find numerosity is satisfied where a class includes at least 40 members. *Holly v. Alta Newport Hospital, Inc.,* 2020 WL 1853308, at *7 (C.D. Cal. April 10, 2020), *citing Rannis v. Recchia,* 380 Fed. App'x 646, 651 (9th Cir. 2010). Numbering approximately 100,000 individuals, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. Joinder of the 103,767 individuals is clearly impracticable—thus the numerosity prong is satisfied.

### 2.   The Settlement Class Satisfies the Commonality Requirement.

The Settlement Class also satisfies the commonality requirement, which requires that class members' claims "depend upon a common contention," of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, as in most data breach cases, "[t]hese common issues all center on [defendant's] conduct, satisfying the commonality requirement." *In re the Home Depot, Inc., Customer Data Sec. Breach Litig*., 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016). Here, common questions include, *inter alia*, whether CPK engaged in the wrongful conduct alleged; whether Settlement Class members' PII was compromised in the Data Incident; whether CPK owed a duty to Plaintiffs and Settlement Class members; whether CPK breached its duties; whether CPK unreasonably delayed in notifying Plaintiffs and Settlement Class members of the material facts of the Data Incident; and whether CPK violated the common law and applicable statutes (such as the CCPA and UCL) as alleged in the Complaint.  Thus, Plaintiffs have met the commonality requirement of Rule 23(a).

### 3.   Plaintiffs' Claims and Defenses are Typical.

Plaintiffs satisfy the typicality requirement of Rule 23 because Plaintiffs' claims are "reasonably coextensive with those of the absent class members." *See* Fed. R. Civ. P. 23(a)(3); *Meyer v Portfolio Recovery Assocs.*, 707 F.3d 1036, 1042

(9th Cir. 2012) (upholding typicality finding). Plaintiffs allege their PII was compromised, and that they were therefore impacted by the same allegedly inadequate data security they allege harmed the rest of the Settlement Class. *See Just Film, Inc. v. Buono*, 847 F.3d 1108, 1118 (9th Cir. 2017) ("[I]t is sufficient for typicality if the plaintiff endured a course of conduct directed against the class.").

### 4.   Plaintiffs are Adequate Settlement Class Representatives.

The adequacy requirement is satisfied where (1) there are no antagonistic or conflicting interests between named plaintiffs and their counsel and the absent class members; and (2) the named plaintiffs and their counsel will vigorously prosecute the action on behalf of the class. Fed. R. Civ. P. 23(a)(4); *see also Ellis,* 657 F.3d at 985 (*citing Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Plaintiffs have no conflicts of interest with other class members, are subject to no unique defenses, and they and their counsel have and continue to vigorously prosecute this case on behalf of the class. Plaintiffs are members of the Settlement Class who experienced the same injuries and seek, like other Settlement Class members, compensation for CPK's data security shortcomings. As such, their interests and those of their counsel are consistent with those of the Settlement Class.

Further, counsel for Plaintiffs have decades of combined experience vigorously litigating class actions, and are well suited to advocate on behalf of the Class. *See* Byrd Decl., ¶ 33 & Exs. 4-7. Plaintiffs satisfy the adequacy requirement.

### B.   The Requirements of Rule 23(b)(3) Are Met for Purposes of Settlement.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, Plaintiffs allege that the Settlement Class is maintainable for purposes of settlement under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for

a fair and efficient resolution of the controversy. *Id.*  In determining whether the "superiority" requirement is satisfied, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

Plaintiffs' claims depend, first and foremost, on whether CPK used reasonable data security measures to protect consumers' PII. That question can be resolved, for purposes of settlement, using the same evidence for all Settlement Class members, and thus is precisely the type of predominant question that makes a class-wide settlement worthwhile. *See, e.g., Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) ….'") (citation omitted).

Additionally, for purposes of settlement, a class action is the superior method of adjudicating consumer claims arising from the Data Incident—just as in other data breach cases where class-wide settlements have been approved. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK (N.D. Cal. July 20, 2019); *Parsons v. Kimpton Hotel & Rest. Group, LLC*, No. 3:16-cv-05387-VC (N.D. Cal. Jan. 9, 2019); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 316-17 (N.D. Cal. 2018); *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015). Adjudicating individual actions here is impracticable:  the amount in dispute for individual Settlement Class members is too small, the technical issues involved are too complex, and the required expert testimony and document review too costly. *See Just Film*, 847 F.3d at 1123.

Also, because Plaintiffs seek to certify a class in the context of a settlement, this Court "need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial." *Amchem Prods.*, 521 U.S. at 620 (citation omitted). The settlement therefore meets the requirements of Rule 23(b)(3).

### C.    The Court Should Preliminarily Approve the Settlement.

Rule 23(e) provides that a proposed class action may be "settled, voluntarily dismissed, or compromised only with the court's approval." "[U]nder Rule 23(e)(1), the issue at preliminary approval turns on whether the Court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *Reyes v. Experian Info. Sols., Inc.*, 2020 WL 466638, at *1 (C.D. Cal. Jan. 27, 2020).  If the parties make a sufficient showing that the Court will likely be able to "approve the proposal" and "certify the class for purposes of judgment on the proposal," "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e).

Preliminary approval "has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). As to the former, "a presumption of fairness applies when settlements are negotiated at arm's length, because of the decreased chance of collusion between the negotiating parties." *Gribble v. Cool Transports Inc*., 2008 WL 5281665, at *9 (C.D. Cal. Dec. 15, 2008). Likewise, "participation in mediation tends to support the conclusion that the settlement process was not collusive." *Ogbuehi v. Comcast of Cal./Colo./Fla./Or., Inc*., 303 F.R.D. 337, 350 (E.D. Cal. 2014). With respect to the latter, "[a]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *Murillo v. Pacific Gas & Elec. Co*., 266 F.R.D. 468, 479 (E.D. Cal. 2010) (*quoting Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

-14-

The Ninth Circuit has identified nine factors to consider in analyzing the fairness, reasonableness, and adequacy of a class settlement: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the views of counsel; (7) the presence of a governmental participant; (8) the reaction of the class members to the proposed settlement and; (9) whether the settlement is a product of collusion among the parties. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011); *see also Hanlon,* 150 F.3d at 1026. Rule 23(e) requires a court to consider several additional factors, including that the class representative and class counsel have adequately represented the class, and that the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e).

In applying these factors, this Court should be guided foremost by the "overriding public interest in settling and quieting litigation[,]" which "is particularly true in class action suits …." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989). Here, the relevant factors support the conclusion that the negotiated settlement is fundamentally fair, reasonable, and adequate, and should be preliminarily approved.

### 1.    The Strength of Plaintiffs' Case

Plaintiffs believe they have built a strong case for liability. With respect to their negligence claim, Plaintiffs believe they will ultimately be able to offer evidence that Defendant was negligent in failing to maintain reasonable and current data security programs and practices, which led directly to the loss of Plaintiffs' and the Class's PII. Byrd Decl., ¶ 23. They likewise contend CPK is liable for its negligent, unfair, and unlawful conduct under common law tort theories as well as state consumer protection statutes, claims which courts have frequently upheld. *See, e.g., Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 650 (N.D. Cal. 2020) ("[T]ime

and money [plaintiff] spent on credit monitoring in response to the Data Breach is
cognizable harm to support her negligence claim"); *In re Adobe Sys., Inc. Priv.
Litig.*, 66 F. Supp. 3d 1197, 1225–27 (N.D. Cal. 2014) (upholding claims for
violations of UCL unlawful and unfair prongs); *Stasi v. Inmediata Health Grp.
Corp.*, 501 F. Supp. 3d 898, 912–19, 921–25 (S.D. Cal. 2020) (upholding claims
for negligence and violation of the California Consumer Privacy Act).

Plaintiffs also state claims under both the unlawful and unfair prongs of
California's Unfair Competition Law. The "unlawful" "prohibits 'anything that can
properly be called a business practice and that at the same time is forbidden by
law.'" *In re Adobe Sys.*, 66 F. Supp. 3d at 1225 (quoting *Cel-Tech Commc'ns, Inc.
v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999)). Plaintiffs allege
CPK violated California law—and therefore violated the UCL—by, *inter alia*,
establishing sub-standard security practices and procedures; soliciting and
collecting PII with knowledge that the information would not be adequately
protected; storing PII in an unsecure environment in violation of California's data
breach statute, Cal. Civ. Code § 1798.81.5; and failing to timely and accurately
disclose the Data Incident in violation of Cal. Civ. Code § 1798.82. Such violations
likewise constitute violations of the UCL. *In re Adobe Sys.*, 66 F. Supp. 3d at 1226.

"The 'unfair' prong of the UCL creates a cause of action for a business
practice that is unfair even if not proscribed by some other law." *Id.* (citing *Korea
Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). There are at
least two tests for determining whether conduct is "unfair": (1) whether "the public
policy which is a predicate to a consumer unfair competition action" is "tethered to
specific constitutional, statutory, or regulatory provisions," and (2) whether the
challenged business practice is "immoral, unethical, oppressive, unscrupulous or
substantially injurious to consumers and requires the court to weigh the utility of
the defendant's conduct against the gravity of the harm to the alleged victim." *Id.*
Plaintiffs allege CPK's conduct, both before and in response to the Data Incident,

1 was immoral, unethical, oppressive, unscrupulous, unconscionable, and

2 substantially injurious to Plaintiffs, it was likely to deceive the public into believing

3 their PII was securely stored, and the harm it caused significantly outweighed its

4 utility. Such violations constitute violations of the UCL under both the "tethering"

5 and "balancing" tests. *Id.* at 1226-27.

6     Plaintiffs believe they stand a reasonable chance of proving that CPK's data

7 security was inadequate and that, if they establish that central fact, Defendant is

8 likely to be found liable under at least some of the liability theories claims Plaintiffs

9 pled in their respective complaints. But Plaintiffs also recognize success is not

10 guaranteed. It is "plainly reasonable for the parties at this stage to agree that the

11 actual recovery realized and risks avoided here outweigh the opportunity to pursue

12 potentially more favorable results through full adjudication." *Dennis v. Kellogg

13 Co.*, 2013 WL 6055326, at *3 (S.D. Cal. Nov. 14, 2013). "Here, as with most class

14 actions, there was risk to both sides in continuing towards trial. The settlement

15 avoids uncertainty for all parties involved." *Chester v. TJX Cos.*, 2017 WL

16 6205788, at *6 (C.D. Cal. Dec. 5, 2017). Given the heavy obstacles and risks

17 inherent in data breach class actions, including class certification, summary

18 judgment, and trial, the substantial benefits the settlement provides favor

19 preliminary approval of the settlement. Byrd Decl., ¶ 24.

20     **2.    The Risk, Expense, Complexity, and Likely Duration of
21           Further Litigation**

22     While Plaintiffs believe their case is a strong one, all cases, including this

23 one, are subject to substantial risk. This case involves a proposed class of

24 approximately 103,767 individuals (each of whom, CPK has argued, would need

25 to establish cognizable harm and causation); a complicated and technical factual

26 overlay; and a sympathetic and motivated Defendant that already has provided

27 some relief to the potentially affected individuals. Byrd Decl., ¶ 25.

28     Although nearly all class actions involve a high level of risk, expense, and

-17-

complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this is an especially complex case in an especially risky arena. Historically, data breach cases face substantial hurdles in surviving even the pleading stage. *See, e.g., Kirsten v. CPK*, ECF No. 34 (where this Court dismissed plaintiffs' complaint for lack of Article III standing); *Hammond v. The Bank of N.Y. Mellon Corp.*, 2010 WL 2643307, at *1-2 (S.D.N.Y. June 25, 2010) (collecting cases). Even cases of similar wide-spread notoriety and implicating data far more sensitive than at issue here have been found wanting at the district court level. *In re U.S. Office of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017) ("The Court is not persuaded that the factual allegations in the complaints are sufficient to establish . . . standing."), *reversed in part*, 928 F.3d 42 (D.C. Cir. June 21, 2019) (holding that plaintiff had standing to bring a data breach lawsuit). Indeed, this Court recently dismissed the *Kirsten* action due to a perceived lack of standing. *See supra*. As one federal district court recently observed in finally approving a data breach settlement with similar class relief: "Data breach litigation is evolving; there is no guarantee of the ultimate result." *Fox v. Iowa Health Sys.*, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021) (citing *Gordon v. Chipotle Mexican Grill, Inc.*, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex.")).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged. For now, data breach cases are among the riskiest and most uncertain of all class action litigations, making settlement the more prudent course when, as here, a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiffs' view, remain untested in a disputed class certification setting and unproven in front of a jury. And as in any data breach case, establishing causation on a class-wide basis is rife with uncertainty. Thus, this factor favors approval.

### 3.    The Risk of Maintaining Class Action Status Through Trial

While Plaintiffs' case is still in the pleadings stage, the parties have not briefed and the Court has not yet certified any class treatment of this case. If these Consolidate Cases were to proceed through trial, Plaintiffs would encounter risks in obtaining and maintaining certification of the class. Defendant will certainly oppose certification if the case proceeds. Thus, Plaintiffs "necessarily risk losing class action status." *Grimm v. Am. Eagle Airlines, Inc.*, 2014 WL 12746376, at *10 (C.D. Cal. Sept. 24, 2014). Class certification in contested consumer data breach cases is not common—first occurring in *Smith v. Triad of Ala.*, *LLC*, 2017 WL 1044692, at *16 (M.D. Ala. Mar. 17, 2017), and most recently in *In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021), where a class was certified over objection to plaintiffs' damage calculation. While certification of additional consumer data breach classes may well follow, the dearth of direct precedent adds to the risks posed by continued litigation.

### 4.    The Amount Offered in Settlement

In light of the risks and uncertainties presented by data breach litigation, the value of the settlement favors approval. The settlement *immediately* makes significant relief available to Settlement Class members. Each Settlement Class member is eligible to make a claim for up to $1,000 in reimbursements for expenses and lost time, and up to $5,000 in reimbursements for extraordinary expenses for identity theft related to the Data Incident, and California Settlement Subclass members are entitled to $100 as a statutory damages award. Moreover, all Settlement Class members will be eligible to enroll in two-years (24 months) of three-bureau credit monitoring. This settlement is a strong result for the Settlement Class, and is in line with or exceeds other settlements in cases involving data breaches of similar scope. *See, e.g. Cochran et al. v. The Kroger Company et al.*, Case No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 31 (settlement providing cash payments of less than $100 assuming a 2% claims rate, two years of three bureau

credit monitoring, **or** documented loss reimbursement of up to $5,000). Because the settlement amount here is similar to other settlements reached and approved in similar cases, this factor reflects that the settlement is fair. *See Calderon v. Wolf Firm*, 2018 WL 6843723, at *7-8 (C.D. Cal. Mar. 13, 2018) (comparing class settlement with other settlements in similar cases). In light of the difficulties and expenses Settlement Class members would face to pursue individual claims, and the likelihood that they might be unaware of their claims, this settlement amount is appropriate. *See id*.

Moreover, the Settlement value per class member here is on par with or exceeds that in other exemplary data breach settlements. Here, there is no aggregate cap on the amount Settlement Class members can claim, so each Settlement Class member could claim the full amounts listed above (including the $100 cash benefit for the California Subclass members).  By way of comparison, the consideration paid by Home Depot to settle a data breach class action was approximately $0.51 per class member. *See In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id*., 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017) (order approving settlement).  And the Target data breach resolved with Target paying the equivalent of $0.17 per class member. *See In re Target Corp. Customer Data Sec. Breach Litig*., No. MDL 14-2522-PAM, ECF No. 358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id*., 2017 WL 2178306, at *1 (D. Minn. May 17, 2017) (order certifying settlement class on remand from the 8th Circuit)  These comparisons are not intended to disparage those settlements, but to underscore the strength of the resolution Plaintiffs have secured here.

### 5. The Extent of Discovery Completed and the Stage of Proceedings

Before entering into settlement discussions on behalf of class members, counsel should have "sufficient information to make an informed decision."

*Linney*, 151 F.3d at 1239. Here, Plaintiffs vigorously and aggressively gathered all of the information that was available regarding CPK and the Data Security Incident—including publicly-available documents concerning announcements of the Data Security Incident and notice of the Data Security Incident CPK sent to its current and former employees. Byrd Decl., ¶ 31. The parties also informally exchanged non-public information concerning the Data Security Incident, the applicable insurance coverage, the size and makeup of the Settlement Class and California Subclass, and the circumstances that led to the breach in preparation for a successful mediation. *Id.*

Although the parties have not engaged in formal discovery, Class Counsel's collective decades of experience in similar types of privacy and data protection class actions provided substantive knowledge that enabled them to represent Plaintiffs' and the Settlement Class' interests without expending hundreds of hours and enormous financial resources to come up to speed on the subject area.  Byrd Decl., ¶ 32.  Plaintiffs are well informed about the strengths and weaknesses of this case, thus "the efficiency with which the Parties were able to reach an agreement need not prevent this Court from granting . . . approval." *Hillman v. Lexicon Consulting, Inc.*, 2017 WL 10433869, at *8 (C.D. Cal. April 27, 2017).

### 6.    The Experience and Views of Counsel

Class Counsel initiated the four lawsuits that now are consolidated before this Court when CPK announced the Data Security Incident, which impacted over 103,757 CPK's current and former employees. Class Counsel have substantial experience litigating complex class cases of various types, including data breach cases such as this one. *See* Byrd Decl., ¶ 33 & Exs. 4-7. Having worked on behalf of the putative class since the Data Security Incident was first announced, evaluated the legal and factual disputes, and dedicated significant time and monetary resources to this litigation, proposed Class Counsel endorse the Settlement without reservation. Byrd Decl., ¶ 34. A great deal of weight is accorded to the

recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. *See, e.g., Norton v. Maximus, Inc.*, 2017 WL 1424636, at \*6 (D. Idaho Apr. 17, 2017); *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). Thus, this factor supports approval.

### 7.   Governmental Participants.

There is no governmental participant in this matter. This factor is neutral.

### 8.   The Reaction of the Settlement Class to the Settlement

Because notice has not yet been given, this factor is not yet implicated; however, Representative Plaintiffs support the Settlement. Byrd Decl., ¶ 20.

### 9.   Lack of Collusion Among the Parties

The parties negotiated a substantial settlement through mediation, as outlined above. The parties did not commence discussion of fees until agreement on all substantive portions of the class resolution had been reached – indeed, the mediation session regarding attorneys' fees was conducted on a separate date (March 15, 2022) following the March 10, 2022 mediation session. Both the class portion of the resolution and the fees were negotiated at arm's-length under the direction of the parties' mutually agreed-upon mediator, Bruce A. Friedman, Esq., who has extensive experience in handling class action cases and data breach class action cases. Byrd Decl., Ex. 2 (Declaration of Bruce A. Friedman, Esq. in Support of Preliminary Approval of Class Action Settlement). The Court can rest assured that the negotiations were not collusive. *See G. F. v. Contra Costa Cnty.*, 2015 WL 4606078, at \*13 (N.D. Cal. July 30, 2015) ("[T]he assistance of an experienced mediator in the settlement  process confirms that the settlement is non-collusive.") (internal quotation marks and citation omitted); *see also Cohorst v. BRE Props.*, 2011 WL 7061923, at \*12 (S.D. Cal. Nov. 9, 2011) ("[V]oluntary mediation before a retired judge in which the parties reached an agreement-in-principle to settle the claims in the litigation are highly indicative of fairness . . . . We put a good deal of stock in the product of arms-length, non-collusive, negotiated resolution.")

### 10.    The Settlement Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the settlement treats all class members equitably. In determining whether this factor weighs in favor of approval, the Court considers whether the Settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Hudson v. Libre Technology Inc.,* 2020 WL 2467060, *9 (S.D. Cal. May 13, 2020) (*quoting In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class as all Settlement Class members are entitled to the same relief.  Each and every Settlement Class member has the opportunity to make a claim for up to $1,000 in reimbursements for expenses and time spent, and up to $5,000 in reimbursements for extraordinary expenses. All Settlement Class members may claim the two-years of three-bureau credit monitoring offered.  And, while the California Settlement Subclass is entitled to a $100 statutory award, that is only because the Settlement "takes appropriate account of differences [in] their claims … that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). As such, this factor also weighs in favor of approval.

### D.    The Court Should Approve the Proposed Notice Program

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). "The notice may be by one or more of the following:  United States mail, electronic means, or other appropriate means." *Id.*  The "best notice practicable" means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797,

812 (1985). Class settlement notices must present information about a proposed settlement simply, neutrally, and understandably and must describe the terms of the class action settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 567 (9th Cir. 2019)

Here, the parties have agreed to a robust notice program to be administered by a well-respected third-party class administrator, Epiq, which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class member via direct-mail postcard notice. SA, ¶ 7. The costs of administering the settlement will be paid by CPK and will not negatively impact the amount available to Settlement Class members who make valid claims. *Id*. ¶ 7(c). The Notice and Claim Form negotiated by the Parties are clear and concise and inform Settlement Class members of their rights and options under the settlement, including detailed instructions on how to make a claim, object to the settlement, or opt-out of the Settlement. *Id.* Exs. A, B and C.

In addition to the direct notice, the Administrator will also establish a dedicated Settlement Website and will maintain and update the website throughout the Claims Period, with the forms of Short Notice, Long Notice, and Claim Form approved by the Court, as well as the Settlement Agreement. *Id.*, ¶ 7 & Exs. A, B and C. The Claims Administrator will also make a toll-free help line staffed with a reasonable number of live operators available to provide Settlement Class members with additional information about the settlement. *Id.* ¶ 7.

Plaintiffs have negotiated a notice program that is reasonably calculated under all the circumstances to apprise Settlement Class members of the pendency of the action and afford them an opportunity to present their objections. Defendant has mailing addresses for the Settlement Class members and notice will be sent to them by U.S. mail.  In short, because this notice plan ensures that Settlement Class members' due process rights are amply protected, this Court should approve it.

### E.     Appointment of the Settlement Administrator

In connection with implementation of the Notice Program and administration of the settlement benefits, the Parties request the Court appoint Epiq to serve as the Claims Administrator. Epiq has a trusted and proven track record of supporting thousands of class action administrations, serviced hundreds of millions of class members, and distributed billions in settlement funds. Byrd Decl., Ex. 3 (Azari Decl.), ¶¶ 4-7. Notice and administration is expected to cost approximately $103,000 and will be paid by Defendant separate and apart from the relief to the Class. *Id.*, ¶ 23; SA, ¶ 6(c).

### F.     Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel have extensive experience prosecuting class actions and other complex cases, and specifically data breach cases. *See* Byrd Decl., ¶ 33, Exs. 4-7 (firm resumes). Accordingly, the Court should appoint Mason Barney of Siri & Glimstad LLP; David Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC; Daniel O. Herrera of Cafferty Clobes Meriwether & Sprengel LLP; and Rachele R. Byrd of Wolf Haldenstein Adler Freeman & Herz LLP as Settlement Class Counsel.

## VI. CONCLUSION

For all the above reasons, Plaintiffs respectfully request this Court to grant Plaintiffs' Motion for Preliminary Approval of Class Action Settlement.

DATED: May 2, 2022                    Respectfully Submitted,

MASON BARNEY (*pro hac vice*)
SONAL JAIN (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
200 Park Avenue, Seventeenth Floor
New York, NY 10166
Telephone: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com
sjain@sirillp.com

DANIEL O. HERRERA (*pro hac vice*)
NICKOLAS J. HAGMAN (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

BRYAN L CLOBES
**CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**
205 N. Monroe St.
Media, Pennsylvania 19063
Telephone: (215) 864-2800
bclobes@caffertyclobes.com

ROLAND TELLIS (SBN 186269)
ADAM TAMBURELLI (SBN 301902)
atamburelli@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: (818) 839-2333
Facsimile: (818) 986-9698
rtellis@baronbudd.com
bclobes@caffertyclobes.com

David K. Lietz (*pro hac vice* filed)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW
Suite 440
Washington, D.C. 20015-2052
Telephone: (866) 252-0878

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Facsimile: (202) 686-2877
dlietz@milberg.com

ALEX R. STRAUS (SBN 321366)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive
Beverly Hills, CA  90212
Telephone:  917-471-1894
Facsimile:  865-522-0049
astraus@milberg.com

BETSY C. MANIFOLD (182450)
RACHELE R. BYRD (190634)
ALEX TRAMONTANO (276666)
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

*Attorneys for Plaintiffs and the Proposed Classes*