Tina Wolfson (SBN 174806)
twolfson@ahdootwolfson.com
Theodore Maya (SBN 223242)
tmaya@ahdootwolfson.com
Christopher Stiner (SBN 276033)
cstiner@ahdootwolfson.com
Deborah De Villa (SBN 312564)
ddevilla@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Avenue, Suite 500
Burbank, CA 91505
Telephone: (310) 474-9111
Facsimile: (310) 474-8585

*Counsel for Plaintiffs and the Proposed Class*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: CALIFORNIA PIZZA KITCHEN DATA BREACH LITIGATION<br><br>This Document Relates To:<br>All Actions | Master File No. 8:21-cv-01928-DOC-KES<br><br>**DECLARATION OF TINA WOLFSON IN SUPPORT OF PLAINTIFFS AVIVA KIRSTEN'S AND JEREMY PITTMAN'S OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Date: June 9, 2022<br>Time: 7:30 a.m.<br>Judge: Hon. David O. Carter<br>Courtroom: 9D |

I, Tina Wolfson, declare as follows:

1. I am a founding partner at the law firm of Ahdoot & Wolfson, PC ("AW"), counsel for Plaintiff in this action. I am admitted to practice law in California and before this court and am a member in good standing with the State Bar of California. I make this Declaration in support of Plaintiffs Aviva Kirsten's and Jeremy Pittman's Opposition to Motion for Preliminary Approval of Settlement.

2. I make this declaration based on my personal knowledge of the matters set forth herein and based on my active participation in all material aspects of this litigation. If called upon to do so, I could and would testify competently thereto.

3. Soon after the *Kirsten* action was filed, on behalf of the Wolfson-Garber team, I reached out to all plaintiffs' counsel in the other actions to meet and confer about streamlining efforts and potentially coming to consensus on leadership. However, Settling Plaintiffs' Counsel insisted on a bloated and extremely inefficient slate of five groups of firms comprised of nine firms in total. Our team could not agree that such a bloated slate would benefit the Class. Instead, the Wolfson-Garber team proposed a two-way leadership, with one qualified firm from the Settling Plaintiffs' Counsel and one firm from the Wolfson-Garber team to lead the case. But the Settling Plaintiffs' Counsel insisted on a 5-way leadership, in the hopes of controlling 80% of the case. In general, Settling Plaintiffs' Counsel brought a self-serving, proprietary, and antagonistic attitude to meeting and conferring with the Wolfson-Garber team from the beginning of communications concerning this litigation.

4. The Wolfson-Garber team proposed that the parties in the related matters enter into a stipulation to consolidate all of the cases and a briefing schedule for Rule 23(g) appointment by the Court, while continuing to meet and confer.

5. The Wolfson-Garber team took the initiative to try to organize this litigation. Our team drafted and circulated a stipulation to consolidate the related actions and establish a leadership briefing schedule on January 24, 2022, and communicated to the Settling Plaintiffs' Counsel that "As we work toward streamlining these cases, *we can continue to*

*meet and confer* regarding self-organization and a leadership structure. *We look forward to working with all of you.*"

6. I and my co-counsel also met and conferred regarding consolidation with defense counsel. A week-and-a-half after we circulated our draft stipulation, the Settling Plaintiffs' Counsel circulated a different version of our draft stipulation, claiming authorship and that they had met and conferred with defense counsel. But I confirmed with CPK's counsel Mr. Grimaldi that prior to me reaching out to meet and confer regarding consolidation, no other plaintiffs' counsel had done so.

7. The Settling Plaintiffs' Counsel apparently duplicated work on a stipulation for the sole reason of optics that they somehow were in charge of the litigation, posturing and highlighting the very inefficiencies Wolfson-Garber team had been concerned about in the first place having a bloated leadership slate.

8. The *Kirsten* action was the only CPK data breach lawsuit that was actually litigated. CPK filed a motion to dismiss *only* in the *Kirsten* matter, despite that my team was willing to stipulate to continue the briefing pending a consolidation.

9. Our team also participated in a Rule 26(f) conference with defense counsel. After the Court set a Rule 26(f) conference, in the spirit of cooperation, disclosure, and inclusion, on February 8, 2022, I circulated the Court's order to all plaintiffs' counsel.

10. Rather than coordinate with the *Kirsten* team, the Settling Plaintiffs' Counsel responded by attaching yet another version of a consolidation stipulation, demanding a response "by cob today." On the same day, I circulated redlines to this version of the draft stipulation and order, after meeting and conferring with and obtaining consent from defense counsel about the Wolfson-Garber team's proposed changes, including a shortened lead counsel application and briefing schedule. On the afternoon of February 9, 2022, the Settling Plaintiffs' Counsel rejected these changes and circulated a revised version of the consolidation stipulation which again included a prolonged leadership briefing schedule, requesting that the *Kirsten* team consent to its filing. Prior to receiving any response or

input from my team, the Settling Plaintiffs' Counsel went ahead and filed yet another version of the consolidation stipulation, omitting *Kirsten* altogether.

11. Although the Order granting the stipulation (ECF No. 21), also drafted by Settling Plaintiffs' Counsel, required that team to file it in any related matter, they failed to do so in *Kirsten* or to serve the stipulation on the Wolfson-Garber team.

12. On February 9, Mr. Grimaldi and I met and conferred about scheduling in *Kirsten* and discussed the possibility of early resolution pursuant to Fed. R. Civ. P. 16(f). Following that discussion, Mr. Grimaldi sent a follow-up email advocating his views of the case and asking, "*Would you consider for example a claims made style settlement*? Do you have a proposed term sheet?" Approximately one week later, the Wolfson-Garber team indicated to CPK counsel that in order to engage in settlement discussions, information should be exchanged and a mediation should be set. Mr. Grimaldi stated he would discuss the proposal with his client.

13. Mr. Grimaldi again met and conferred with our team pursuant to Fed. R. Civ. P. 26(f) on March 14, 2022, apparently after the March 10 mediation took place and a day before the March 15 mediation was scheduled to occur. During this discussion, the Wolfson-Garber team discussed mediation again and specifically asked Mr. Grimaldi whether CPK was negotiating with any other plaintiff counsel, and the status of such discussions. Mr. Grimaldi misled me and my team, stating that CPK wanted to wait until lead counsel is appointed before engaging in substantive settlement efforts and deliberately omitted that mediation had taken place. Mr. Grimaldi subsequently failed to inform the Court in the parties' joint Rule 26(f) report that was filed later that day that mediation had taken place.

14. During settlement negotiations, CPK siloed its communications to the Settling Plaintiffs' Counsel on the one hand, and the Wolfson-Garber team on the other. It presented an offer of a claims-made only settlement to both groups. The Wolfson-Garber team declined this offer, and when our team exercised their fiduciary duty to the Class and demanded that any settlement discussions be conducted without condition and only after

seminal information was exchanged, CPK stopped settlement discussions with the Wolfson-Garber team, and then lied to the Wolfson-Garber team by stating that discussions would take place only after the Court appointed lead counsel.

15. The notice plan employed as part of the proposed Settlement in this case—a one-time mail or e-mail notice—is not the best notice practicable because it omits (1) a reminder notice program, (2) a targeted social media/internet advertising campaign, and (3) a publication of the notice through CPK's employee intranet or other internal employee communication system. (*See* http://www.imagistic.com/news/imagistic-delivers-new-california-pizza-kitchen-web-site-intranet (last visited May 19, 2022)). The third option is free, and the first two options cost very little and have become commonplace effective tools in class action settlements.

16. The Settling Plaintiffs' Counsel have opted to employ a 60-day claims period as part of the proposed settlement. In my opinion, based upon my extensive experience in similar class action litigation, 90 days is the "gold standard" for a claims period duration and this should have been the minimum duration for the claims period in any Settlement in this litigation.

17. The rushed timing of the Settlement here is particularly troubling in light of the fact that CPK heavily litigated *Kirsten* with the Wolfson-Garber team, bringing two motions to dismiss in *Kirsten*, meeting and conferring pursuant to Rule 26(f) and filing a joint report, and serving frivolous objections to the discovery served by the Plaintiffs in *Kirsten*.

18. The Settlement is also troubling in view of the fact that it clearly was intended to avoid the lead counsel appointment process that Settling Plaintiffs' Counsel established. On March 16, 2022, the eve of the deadline to file lead counsel applications (a deadline that Settling Plaintiffs' Counsel set), and without meeting and conferring with or serving the Wolfson-Garber team, the Settling Plaintiffs' Counsel and CPK filed a stipulation to stay the litigation pending final approval of the Settlement. ECF No. 29. As the filing references, counsel e-mailed the Court without copying my team. The Wolfson-Garber

team e-mailed the Court Clerk to notify that it would be opposing the stay request, which it did.

19.  The Wolfson-Garber team routinely works with experts who can propose damage models to evaluate the information compromised in the Data Breach to be worth $200 per class member.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 19th day of May, at Los Angeles, California.

*/s/ Tina Wolfson*

Tina Wolfson