MASON BARNEY (*pro hac vice*)
**SIRI & GLIMSTAD LLP**
200 Park Avenue
Seventeenth Floor
New York, NY 10166
Telephone: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com

DANIEL O. HERRERA (*pro hac vice*)
**CAFFERTY CLOBES**
**MERIWETHER & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com

DAVID K. LIETZ (*pro hac vice*)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN PLLC**
5335 Wisconsin Avenue NW,
Suite 440
Washington, DC 20015
Phone: (866) 252-0878
Fax: (202) 686-2877
dlietz@milberg.com

RACHELE R. BYRD (190634)
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com

*Class Counsel and Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: CALIFORNIA PIZZA KITCHEN DATA BREACH LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Master File No. 8:21-cv-01928-DOC-KES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' RENEWED MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>DATE: June 9, 2025<br>TIME: 9:00 a.m.<br>COURTROOM: 10 A<br>JUDGE: Hon. David O. Carter |

---

MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR ATTORNEYS' FEES AND EXPENSES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY ............................................... 3

        A.      This Court Approves the Settlement ......................................................... 3

        B.      Plaintiffs and Class Counsel Successfully Defend the Settlement ....... 5

III.    ARGUMENT ........................................................................................ 6

        A.      The Requested Fee Award is Fair and Reasonable by Ninth Circuit
                Standards ............................................................................................... 6

                1.      The Requested Fees Equals 25% of the Settlement's Total
                        Value ................................................................................... 7

                2.      Class Counsel's Requested Fee Represents a Negative
                        Multiplier Relative to the Reasonable Lodestar They Incurred in
                        Negotiating, Effectuating and Defending the Settlement ........... 8

                3.      Plaintiffs' Fee Request Is Justified by the Results Obtained, the
                        Complexity of the Issues, and the Contingent Nature of the
                        Representation .................................................................... 11

                        a.      The Complex Nature of the Litigation and Contingent
                                Risks ................................................................. 12

                        b.      Class Counsel Obtained an Excellent Result for All Class
                                Members .......................................................... 155

                        c.      Class Counsel Demonstrated the Skill Required to
                                Prosecute this Action Effectively .................................. 16

        B.      Plaintiffs Also Seek Reimbursement of Reasonable Expenses .......... 17

IV.     CONCLUSION ................................................................................ 18

1

## <u>TABLE OF AUTHORITIES</u>

2

**CASES**

3

4
*Abdullah v. United States Sec. Assoc.*,
  2017 U.S. Dist. LEXIS 235743 (C.D. Cal. Dec. 4, 2017) ................................... 11

5

6
*Adkins v. Facebook, Inc.*, No. C 18-05982 WHA,
  2019 U.S. Dist. LEXIS 206271 (N.D. Cal. Nov. 26, 2019) ............................... 13

7

8
*Adtrader, Inc. v. Google LLC*,
  2020 U.S. Dist. LEXIS 71654 (N.D. Cal. Mar. 16, 2020) ................................... 10

9

10
*Antman v. Uber Techs., Inc.*,
  2015 U.S. Dist. LEXIS 141945 (N.D. Cal. Oct. 19, 2015) ................................. 12

11

12
*Bernardino Valley Audubon Soc'y, Inc. v. County of San Bernardino*,
  155 Cal. App. 3d 738 (1984) ................................................................................. 9

13

14
*Cochran et al. v. The Kroger Company et al.*, No. 5:21-cv-01887-EJD ................ 15

15

16
*Figueroa v. Capital One, N.A.*, No. 18cv692 JM(BGS),
  2021 U.S. Dist. LEXIS 11962 (S.D. Cal. Jan. 21, 2021) ............................... 10, 11

17

18
*Franlink, Inc. v. Bace Servs.*,
  2020 U.S. Dist. LEXIS 256098 (S.D. Tex. Sep. 24, 2020) ................................. 14

19

20
*Hammond v. Bank of N.Y. Mellon Corp.*,
  2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ................................... 13

21

22
*Harris v. Maroefer*, 24 F.3d 16 (9th Cir. 1994) ...................................................... 18

23

24
*In re Am. Apparel, Inc. S'holder Litig.*,
  2014 U.S. Dist. LEXIS 184548 (C.D. Cal. July 28, 2014) ................................. 16

25
*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) ......... 6, 10

26

27
*In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR,
  2021 U.S. Dist. LEXIS 71965 (M.D. Fla. Apr. 14, 2021) ................................... 14

28

*In re California Pizza Kitchen Data Breach Litig.*,
129 F.4th 667, 677 (9th Cir. 2025) ...............................................*passim*

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-
01998, 2010 U.S. Dist. LEXIS 87409 (W.D. Ky. Aug. 23, 2010) .....................13

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D.
Me. 2013) ..............................................................................................14

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2007).................15

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12, 2019) ..............................12

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)....................................................12

*In re Target Corp. Customer Data Sec. Breach Litig.*,
2017 U.S. Dist. LEXIS 75455 (D. Minn. May 17, 2017)...................................16

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
2017 U.S. Dist. LEXIS 221736 (N.D. Ga. Sept. 22, 2017) ...............................16

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-MD-02583-TWT, ECF No. 181-2 (March 7, 2016)............................15

*In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) ..........14

*Kimber Baldwin Designs LLC v. Silv Communications, Inc.*,
2017 WL 5247538 (S.D. Ohio 2017)...................................................11

*Kirsten v. California Pizza Kitchen*, No. 2:21-cv-09578-DOC-KES .............2, 4, 13

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .........................12

*Loomis v. Slendertone Distrib.*,
2021 U.S. Dist. LEXIS 44047 (S.D. Cal. Mar. 8, 2021) ...................................10

*Metrow v. Liberty Mut. Managed Care LLC,*
 2018 U.S. Dist. LEXIS 100835 (C.D. Cal. June 14, 2018) ................................. 17

*Mobile Emergency Hous. Corp. v. HP Inc*.,
 2025 WL 844412 (N.D. Cal. Mar. 18, 2025),.................................................. 11

*Morales v. California Pizza Kitchen, Inc.,* No. 8:21-cv-01988-DOC-KES .............. 3

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008). ............................. 9

*PCLM Group, Inc. v. Drexler,* 22 Cal.4th 1084 (2000) ........................................... 9

*Rigas, et al. v. California Pizza Kitchen, Inc*., No. 8:21-cv-02004-DOC-KES ........ 3

*Sadowska v. Volkswagen Group of Am., Inc.*,
 2013 U.S. Dist. LEXIS 188582 (C.D. Cal. Sep. 25, 2013)................................. 11

*Stewart v. Apple Inc.*,
 2022 U.S. Dist. LEXIS 139222 (N.D. Cal. Aug. 4, 2022).................................. 17

*Sudunagunta v. NantKwest, Inc.*,
 2019 U.S. Dist. LEXIS 81337 (C.D. Cal. May 13, 2019) .................................. 17

*Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691 (2014) .............................. 9

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021)................................................. 13

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002). ................................ 16

*Wallace et al. v. California Pizza Kitchen, Inc*., No. 8:21-cv-01970-DOC-KES ..... 3

*Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115 (9th Cir. 2002).................................... 17

*Yue v. Conseco Life Ins. Co.,* No. CV0801506AHMJTLX, 2011 WL 13176748
 (C.D. Cal. Sept. 9, 2011)...................................................................................... 6

**RULES**

Cal. Code Civ. P. § 1021.5 ....................................................................................... 6

1

Fed. R. Civ. P. 23 .................................................................................................. 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR ATTORNEYS' FEES AND EXPENSES

## I.    INTRODUCTION

Plaintiffs Kansas Gilleo, Sydney Rusen, Esteban Morales, Douglas Wallace, Brett Rigas, and Evencio Diaz ("Plaintiffs" or "Representative Plaintiffs"), through their undersigned counsel, respectfully move this Court for entry of an order granting their Renewed Motion for Attorneys' Fees and Costs in the amount of $256,617.24—exactly 25% of the Settlement's total monetary value—plus expenses of $35,468.82.

As this Court knows, this class action arose out of an alleged Data Incident Defendant California Pizza Kitchen, Inc. ("Defendant" or "CPK") discovered on or about September 15, 2021. Representative Plaintiffs in the consolidated complaint alleged that as a result of the Data Incident, unauthorized users accessed Representative Plaintiffs' and CPK's current and former customers' and employees' personal identifying information ("PII"), including names and Social Security numbers. *See Gilleo, et al. v. California Pizza Kitchen, Inc., et al.*, No. 8:21-cv-01928, ECF No. 1 ("Compl."), ¶¶ 3-6. Plaintiffs and CPK thereafter engaged in mediation before mediator Bruce A. Friedman, Esq., and over the course of two separate mediation sessions reached a resolution that provides relief to the 103,767 Settlement Class Members, including the 30,781 members of the California Settlement Subclass.[1] ECF No. 44-1 at 10.

This Court granted the Settlement Preliminary Approval on June 30, 2022. ECF No. 57. Plaintiffs subsequently submitted a motion for attorneys' fees,

---

[1] Capitalized terms have the same definitions as in the Settlement Agreement and Release ("Settlement Agreement" or "SA"), filed on May 2, 2022. ECF No. 44-3 at Ex. 1. The Settlement Class is defined as: "All persons who were sent notice of the Data Security Incident announced by defendant on or about November 15, 2021." SA ¶ 1. The settlement also provides for a California Settlement Subclass, defined as: "All persons residing in California who were sent notice of the Data Security Incident announced by defendant on or about November 15, 2021." *Id*. The Settlement Class and California Settlement Subclass were estimated to include 103,767 and 30,781 individuals, respectively. *Id*.

expenses, and service awards on September 14, 2022, ECF No. 68, and moved for final approval of the settlement on October 6, 2022. ECF No 70. On November 7, 2022—over the objection of counsel for plaintiffs in a competing class action—*Kirsten v. California Pizza Kitchen*, No. 8:21-cv-09578-DOC-KES—the Court finally approved the Settlement and granted Class Counsel's fee and expense motion, finding both the Settlement and Counsel's requested fee award of $800,000 to be "fair, reasonable, and adequate." ECF. No. 87 at 2. Counsel for the *Kirsten* plaintiffs appealed both the settlement approval order and the fee and expense award. *See* ECF. No. 88.

In a February 24, 2025 Opinion and Order, the Ninth Circuit affirmed this Court's Final Approval Order, holding that "the district court did not abuse its discretion in finding [the Settlement] fair, reasonable, and adequate." *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 677 (9th Cir. 2025) ("*In re CPK*"). The Ninth Circuit's ruling has (finally) enabled Epiq Class Action and Claims Solutions, Inc. ("Epiq"), the Claims Administrator, to deliver to the Settlement Class the considerable relief to which they are entitled under the agreement, and that Class Counsel negotiated on their behalf more than three years ago. Indeed, Settlement Class Members successfully claimed $597,281.72 in monetary relief and credit monitoring and identity theft protection benefits, and Epiq already has begun to distribute those benefits to approved claimants. *See* Decl. of Rachel Christman ("Christman Decl."), ¶ 7 (filed herewith).

Despite Class Counsel's successful defense of the Settlement itself, however, the Panel reversed and remanded this Court's fee and expense award. *In re CPK*, 129 F.4th at 679-80. Rather than apply the lodestar method typically used to evaluate fees in connection with claims-made settlements, the Ninth Circuit has instructed the Court to "calculate the actual value of the settlement to the class" inclusive of the value of approved claims, notice and administration costs, and attorneys' fees, "and perform a crosscheck of the lodestar against the 25%

percentage-of-recovery benchmark to ensure that fees are reasonable." *Id.* at 680; *see also id*. at 680 n.7.

In accordance with that opinion, Plaintiffs respectfully move for a modified fee and expense award of $292,086.06, which includes $256,617.24 in attorneys' fees and $35,468.82 in expenses. As detailed below and in the supporting declarations of Mason Barney ("Barney Decl."), David Lietz ("Lietz Decl."), Rachele R. Byrd ("Byrd Decl."), and Daniel Herrera ("Herrera Decl."), the requested attorneys' fees are precisely 25% of the Settlement's total value—inclusive of the value of all approved remedies claimed by the Settlement Class ($597,281.72), notice and administration costs ($172,570.00), and the proposed attorneys' fee award—and represent a *negative multiplier* of 0.21 relative to the $1,237,551.70 lodestar Class Counsel incurred in negotiating the Settlement, securing its approval, and successfully defending the Settlement on appeal. The modified fee and expense award is consistent with the Ninth Circuit's opinion and thus is fair, reasonable and adequate.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    This Court Approves the Settlement

On or about September 15, 2021, CPK discovered it had experienced a data security incident during which the PII of current and former employees may have been accessed. *See* ECF No. 1 ("Compl.") ¶ 5. In November 2021, following a forensic investigation, CPK sent notice of the Data Incident to approximately 103,767 individuals whose PII may have been subject to unauthorized access. *Id*.

Five lawsuits arising from this Data Incident were filed, four of which were consolidated before this Court (the "Consolidated Cases").[2] ECF. No. 30. Shortly

---

[2] *Gilleo, et al. v. California Pizza Kitchen, Inc., et al*., No. 8:2021-cv-01928-DOC-KES; *Morales v. California Pizza Kitchen, Inc.,* No. 8:21-cv-01988-DOC-KES; *Wallace et al. v. California Pizza Kitchen, Inc*., No. 8:21-cv-01970-DOC-KES; *Rigas, et al. v. California Pizza Kitchen, Inc*., No. 8:21-cv-02004-DOC-KES.

MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR ATTORNEYS' FEES, AND EXPENSES

-3-

1    thereafter, the parties to the Consolidated Cases agreed to explore settlement and
2    scheduled a formal mediation. ECF No. 44-2, ¶ 6. After two grueling mediation
3    sessions, the parties reached an agreement in principle on the material terms of a
4    class-wide settlement. ECF No. 44-2, ¶ 8. The parties spent the next few weeks
5    reducing their agreement to writing. *Id*.

6        On June 30, 2022, this Court granted the Settlement preliminary approval
7    and authorized the Claims Administrator to disseminate Notice to the Class. ECF
8    Nos. 57, 62. The Settlement entitled every Settlement Class Member to claim
9    reimbursement of ordinary expenses and lost time up to $1,000 per Class Member,
10   and extraordinary expenses up to $5,000 per Class Member, in addition to two-
11   years of three-bureau credit monitoring. SA ¶ 3. California Subclass Members were
12   also able claim the California Statutory Claim benefit of $100 each. *Id.* CPK also
13   agreed to maintain for a period of three (3) years remedial measures it implemented
14   in response to the Data Incident, the costs of which will be borne by CPK separate
15   and apart from the relief afforded to Settlement Class Members. *Id*, ¶ 6.

16       Class Counsel immediately set upon working with the Claims Administrator
17   to ensure notice of the Settlement reached as broad a swath of the Settlement Class
18   as possible. To that end, Class Counsel worked with CPK to supplement the Court-
19   approved Notice Program by implementing a social media advertising program that
20   delivered over 22.5 million impressions to potential class members. ECF No. 68-6
21   ¶¶ 22-23. Class Counsel also publicized the Settlement through their own social
22   media channels to further amplify Notice. ECF No. 68-5 ¶ 7. Meanwhile, Class
23   Counsel continued to field questions and requests from Settlement Class Members
24   in order to ensure that each and every one secured the benefits to which the
25   Settlement entitles them. ECF No. 68-5 ¶ 6; ECF No. 68-2 ¶ 6; ECF No. 68-3 ¶ 4;
26   ECF No. 68-4 ¶ 11.

27
28   *Kirsten et al. v. California Pizza Kitchen, Inc*., No. 2:21-cv-09578-DOC-KES was
     not included in the consolidated action.

The Class strongly supported this Settlement. Only the *Kirsten* plaintiffs objected to the Settlement and only four requests for exclusion were received. ECF No. 68-6 ¶¶ 28, 29. This Court thus granted Final Approval to the Settlement on February 22, 2023. ECF No. 87. The Court also awarded Class Counsel $800,000 in fees and expenses, which represented a modest multiplier of 1.12 relative to Class Counsel's total lodestar of $687,681.00 and total expenses of $26,367.05 through November 14, 2022. ECF No. 81 at 2.

### B. Plaintiffs and Class Counsel Successfully Defend the Settlement

The *Kirsten* plaintiffs elected to appeal this Court's Final Approval order, notwithstanding that the appeal would delay the provision of the Settlement's benefits to Settlement Class Members. *See* ECF No. 88. On February 24, 2025, following briefing and oral argument, the Ninth Circuit issued its opinion affirming this Court's order finally approving the settlement as "fair, reasonable, and adequate." *In re CPK*, 129 F.4th at 677. The appellate court reversed only the attorney fee award.

The only issue remaining before this Court, therefore, is the appropriate fee and expense award to Class Counsel to compensate for the considerable professional time and out-of-pocket expenses they incurred in negotiating a fair and reasonable settlement that delivers real monetary and programmatic relief to the Class *and* in successfully defending that Settlement before the Ninth Circuit. Specifically, the Court has been instructed to "calculate the actual value of the settlement to the class" inclusive of the value of approved claims, notice and administration costs, and attorneys' fees, "and perform a crosscheck of the lodestar against the 25% percentage-of-recovery benchmark to ensure that fees are reasonable." *Id.* at 680; *see also id.* at 680 n.7.

Accordingly, Plaintiffs now move for an award of $35,468.82 in expenses and $256,617.24 in attorneys' fees. The attorneys' fees sought equate to 25% of the Settlement's total class benefit ($1,026,468.96), inclusive of the requested fee

MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR ATTORNEYS' FEES, AND EXPENSES

1    award, the cash value of all approved claims ($597,281.72) and notice and

2    administration costs ($172,570.00). Plaintiffs' modified fee request represents a

3    significant negative multiplier on Class Counsel's lodestar of $1,237,551.70 and a

4    significant reduction from the Court's prior fee award. *See* Barney Decl., ¶ 5; Byrd

5    Decl., ¶ 5; Herrera Decl., ¶ 5; Lietz Decl., ¶ 8.

6    **III.    ARGUMENT**

7        **A.    The Requested Fee Award is Fair and Reasonable by Ninth Circuit**
8            **Standards**

9        "[A]ttorneys' fees and costs may be awarded in a certified class action where

10   so authorized by law or the parties' agreement …." *In re Bluetooth Headset Prod.*

11   *Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing Fed. R. Civ. P. 23(h)). Such is

12   the case here, both because CPK has agreed to pay Class Counsel's fees separate and

13   apart from the relief it is providing to the Class, and Plaintiffs are the "successful

14   party" in an action brought under California law that resulted in the enforcement of

15   an important right affecting the public interest. *See* Cal. Code Civ. P. § 1021.5; *Yue*

16   *v. Conseco Life Ins. Co.,* No. CV0801506AHMJTLX, 2011 WL 13176748, at *2–3

17   (C.D. Cal. Sept. 9, 2011) (applying section 1021.5 in nationwide class action brought

18   in federal court but involving California statutory claims).

19       On appeal, the Ninth Circuit explained that the fees awarded must be

20   "reasonable," and that "[t]he touchstone for that analysis is the benefit to the class .

21   . . ." *In re CPK*, 129 F.4th at 679 (quotations and citations omitted). The Ninth

22   Circuit also noted that prevailing counsel typically are entitled to a fee award

23   equivalent to 25% of a settlement's total value, including the value of the recovery

24   claimed by the class. *Id.* However, "certain factors, like the quality of representation,

25   the benefit obtained for the class, the complexity and novelty of the issues presented,

26   and the risk of nonpayment, may favor upward or downward adjustment." *Id.*

27   (quotations and citations omitted).

28       In light of the foregoing, in its opinion the Ninth Circuit instructed this Court

MEM. OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
RENEWED MOTION FOR ATTORNEYS' FEES, AND EXPENSES

to undertake a two-pronged approach: (1) evaluate the fee requested against the settlement's total value, inclusive of the recovery claimed by the class, attorneys' fees, and notice and administration costs; and (2) crosscheck the lodestar against the 25% percentage-of-recovery benchmark to ensure the fees are reasonable. *Id.* at 680.

When assessed within this framework and judged against Class Counsel's collective lodestar of $1,237,551.70— which they incurred negotiating, effectuating and defending on appeal the fair, reasonable and adequate Settlement—the requested award of $256,617.24 in fees and $35,468.82 in expenses is reasonable and justified. *See, e.g.* Herrera Decl., ¶ 6.

### 1.    The Requested Fees Equals 25% of the Settlement's Total Value

The Court initially granted "a positive multiplier to counsel's lodestar," awarding Class Counsel $800,000 in combined fees and expenses and finding that "amount to be fair and reasonable." ECF No. 87, ¶ 13. However, the Ninth Circuit held that the fees awarded should not exceed 25% of the settlement's total value, and that on remand a "downward adjustment" may be required. *In re CPK*, 129 F.4th at 680.

Plaintiffs and Class Counsel have taken that admonition to heart and now seek a reduced fee award of $256,617.24, an amount equivalent to 25% of the Settlement's total value. As this Court knows, Settlement Class Members were permitted to choose from various categories of monetary relief, including reimbursement of ordinary expenses and lost time up to $1,000 or extraordinary expenses up to $5,000. SA ¶ 3. California Subclass Members also could claim California Statutory Claim benefits of $100 per person. *Id.* In addition, all participating claimants were eligible for two years of three-bureau credit monitoring, conservatively valued at $360 per claimant. *Id.*; *see* Declaration of David Lietz, ¶¶ 19-21; *see also* Christman Decl., ¶ 7. Following a thorough review, the Claims Administrator approved 1,799 claims with an aggregate value of $597,281.72 (*id.*),

bringing the Settlement's value inclusive of Class Counsel's fee request ($256,617.24) and notice and administration costs ($172,570.00) to $1,026,468.96. Class Counsel's fee request thus represents exactly 25% of the Settlement's total monetary value. This excludes the value of the considerable business practice changes and programmatic relief the Settlement requires CPK to undertake, *see* SA ¶ 6—consistent with the Ninth Circuit's order in this case. *See In re CPK*, 129 F.4th at 680.

### 2. Class Counsel's Requested Fee Represents a Negative Multiplier Relative to the Reasonable Lodestar They Incurred in Negotiating, Effectuating and Defending the Settlement

The Ninth Circuit also instructed this Court to evaluate the reasonableness of Class Counsel's lodestar and in order to crosscheck the requested fee against it.

The time committed to this case was necessary and reasonable. The extensive work performed by Class Counsel are fully detailed in the previous Class Counsel Declarations (*See* ECF No. 68-5 ¶ 10; ECF No. 68-2 ¶ 13; ECF No. 68-3 ¶ 7; ECF No. 68-4 ¶ 22) and in the Declarations of Class Counsel filed herewith, but include:

- extensive, independent factual investigations, before and after the original independent complaints were filed, into the Data Breach, the exposure of Plaintiffs' PII, and Plaintiffs' damages, including mitigating the risk of fraud and identity theft;
- drafting independent complaints;
- self-organizing and coordinating their combined legal talents for the benefit of the Class, and consolidating the various lawsuits then pending before this Court;
- engaging in arm's-length negotiations, including mediation;

---

- requesting and reviewing information from Defendant sufficient to allow Class Counsel to evaluate the value of the claims and the viability of potential defenses;

- painstaking negotiation of the Settlement Agreement and its exhibits, the notice program, and the notice forms;

- researching and drafting the preliminary approval motion;

- overseeing the Notice Program and the claims administration process;

- drafting the final approval motion;

- preparing for, and appearing at, the Final Approval Hearing;

- responding to Settlement Class Member inquiries concerning the Settlement; and

- successfully defending the Settlement on appeal.

*See* Barney Decl., ¶ 3; Byrd Decl., ¶ 3; Herrera Decl., ¶ 3; Lietz Decl., ¶¶ 3-4.

Based on their hourly rates (as set forth in each firm's respective declaration) Class Counsel's current collective loadstar is $1,237,551.70. *Id*. Class Counsel's lodestar is reasonable and supports an appropriate valuation of the time they spent bringing this action to a successful conclusion. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

Class Counsel's hourly rates likewise are reasonable because they reflect the market value of their legal services based on their experience and expertise. ECF No. 68-5 ¶ 10; ECF No. 68-2 ¶ 13; ECF No. 68-3 ¶ 7; ECF No. 68-4 ¶ 22. "The reasonable hourly rate is that prevailing in the community for similar work." *PCLM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1095 (2000); *see also Syers Props. III, Inc. v. Rankin*, 226 Cal. App. 4th 691, 702 (2014). When assessing claims under the lodestar method, payment at full market rates is essential to entice well-qualified counsel to undertake difficult cases such as this one. *San Bernardino Valley Audubon Soc'y, Inc. v. County of San Bernardino*, 155 Cal. App. 3d 738, 755 (1984). Class Counsel puts forth their respective hourly rates below for the Court's

reference.

Class Counsel are highly-regarded members of the Bar and have extensive experience in class actions and complex litigation and have submitted declarations evidencing the reasonable hourly rates for their services. Barney Decl., ¶¶ 7-8; Byrd Decl., ¶¶ 7-8; Herrera Decl., ¶¶ 7-8; Lietz Decl., ¶¶ 10-14. The hourly rates for the four firms range from $385.00 to $1,300.00 for attorneys and $170.00 to $475.00 for paralegals. *Id*. These rates are squarely in line with prevailing rates in this jurisdiction and Southern California and are paid by hourly paying clients of their firms and/or have been approved by numerous other courts. *Loomis v. Slendertone Distrib.*, No. 19-cv-854-MMA (KSC), 2021 U.S. Dist. LEXIS 44047, at *27 (S.D. Cal. Mar. 8, 2021) (approving hourly rates between 575 and $750); *Figueroa v. Capital One, N.A.*, No. 18cv692 JM (BGS), 2021 U.S. Dist. LEXIS 11962, at *28 (S.D. Cal. Jan. 21, 2021) (finding reasonable "hourly rates for attorneys … ranging from $450 to $850 an hour, and the paralegals … at $125 and $203 an hour."); *see also Adtrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2020 U.S. Dist. LEXIS 71654, at *26 (N.D. Cal. Mar. 16, 2020) (accepting rates between $1,000 per hour for senior partners to $855 per hour for junior partners, and citing cases showing such rates were reasonable). The Court previously found both the attorney time committed to the case and the hourly rates charged to be reasonable. ECF No. 87 ¶ 13. Plaintiffs respectfully submit it should do so again on remand.

Class Counsel's requested fee award of $256,617.24 is eminently reasonable when compared to the considerable time counsel committed to prosecuting this action and delivering concrete relief to thousands of affected Settlement Class Members. That fee request represents a substantial *negative multiplier* of 0.21 against counsel's lodestar, a significant departure from the *In re Bluetooth* presumption that a fee based upon lodestar is reasonable. *In re Bluetooth*, 654 F.3d at 941. It is an even more significant departure from the *positive* multipliers district courts in the Ninth Circuit typically award to counsel in successful class cases. *See,*

*e.g., Sadowska v. Volkswagen Group of Am., Inc.*, No. CV 11-00665-BRO (AGRx), 2013 U.S. Dist. LEXIS 188582, at *27 (C.D. Cal. Sep. 25, 2013) (approving attorney's fee where the attorneys sought "a modest multiplier calculated presently to be approximately 1.37."); *Figueroa*, 2021 U.S. Dist. LEXIS 11962, at *28 (awarding multiplier of 3.35); *Abdullah v. United States Sec. Assoc.*, No. CV 09-9554 PSG (Ex), 2017 U.S. Dist. LEXIS 235743, at *30 (C.D. Cal. Dec. 4, 2017) (awarding multiplier of 2.4). "[T]he negative lodestar multiplier demonstrates the reasonableness of the requested attorneys' fees." *Mobile Emergency Hous. Corp. v. HP Inc*., No. 5:20-CV-09157-SVK, 2025 WL 844412, at *2 (N.D. Cal. Mar. 18, 2025), citing *Kimber Baldwin Designs LLC v. Silv Communications, Inc.*, 2017 WL 5247538, at *6 (S.D. Ohio 2017).

Class Counsel's fee request thus is fair and reasonable as compared to both the Settlement's total cash value and the significant time and effort counsel committed to litigating this action on behalf of Settlement Class Members. It therefore complies with the Ninth Circuit's Order in this case. *In re CPK*, 129 F.4th at 680.

### 3. Plaintiffs' Fee Request Is Justified by the Results Obtained, the Complexity of the Issues, and the Contingent Nature of the Representation

As the Ninth Circuit noted, the Court also may consider certain factors in determining "whether to apply either an upward or downward adjustment" from the 25% benchmark. *In re CPK*, 129 F.4th at 679. These factors include "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 678 n. 5 (discussing *Hanlon* factors). This Court previously found that these factors supported a fee considerably higher than that which Class Counsel now seeks. *See* ECF No. 87 ¶¶ 12-13. The Ninth Circuit's recent order supports those findings. *See In re CPK*, 129 F.4th at 677 (noting "significant risks, expense, and/or uncertainty" of litigation, including

class members' potential lack of standing, and the arms'-length and adversarial mediation overseen by an experienced and engaged mediator). Nevertheless, Plaintiffs again address each of the *Hanlon* factors below.

### a. The Complex Nature of the Litigation and Contingent Risks

There is no question regarding the complexity this case presented, either on its merits or in defense of the Settlement reached. As such, the risks presented justify rewarding counsel for taking on this action, representing their clients on contingency, and then achieving an excellent result for the class at large over the objection of plaintiffs in a related case pending before this Court.

Although nearly all class actions involve a high level of risk, expense, and complexity—undergirding the strong judicial policy favoring amicable resolutions, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)—this was a complex class in an especially risky area. *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *14 (N.D. Ohio Aug. 12, 2019) ("Data breach litigation is complex and risky."). That is because "[t]he law in data breach litigation remains uncertain and the applicable legal principles have continued to evolve…." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 1:17-MD-2800-TWT, 2020 U.S. Dist. LEXIS 118209, at *240 (N.D. Ga. March 17, 2020); *In re Sonic Corp.*, 2019 U.S. Dist. LEXIS 135573 at *14 ("This unsettled area of law often presents novel questions for courts."). Historically, data breach cases have faced substantial hurdles in making it past the pleading stage. *See, e.g.*, *Antman v. Uber Techs., Inc.*, No. 3:15-cv-01175, 2015 U.S. Dist. LEXIS 141945, at *29 (N.D. Cal. Oct. 19, 2015) (holding that the risk that plaintiff's identity could be stolen was insufficient to confer standing based on a data breach exposing plaintiff's name and driver's license number); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 966 (S.D. Cal. 2012) (loss of personal information and allegations of a heightened risk

of identity theft, without more, calls standing into question); *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB), 2010 U.S. Dist. LEXIS 71996, at *2-4 (S.D.N.Y. June 25, 2010) (collecting cases and noting that "every court to [analyze data breach cases] has ultimately dismissed under Rule 12(b)(6) . . . or under Rule 56 following the submission of a motion for summary judgment."). *See also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, at *25-26 (W.D. Ky. Aug. 23, 2010) (approving a data breach settlement in part because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results.").

The pleading risks inherent in this case are apparent from the history of the companion case to this action, *Kirsten v. California Pizza Kitchen*, No. 2:21-cv-09578-DOC-KES. There, this Court dismissed the action on standing grounds, (*id.*, ECF No. 34), then granted in part a second motion to dismiss the amended complaint. *Id.*, ECF No. 50. Those orders demonstrate precisely why, as the Ninth Circuit explained in its opinion and order in this case, "Article III standing can be an uphill battle for data-breach plaintiffs, who must allege a 'concrete harm,' not just an 'asserted risk of future harm.'" *In re CPK*, 129 F.4th at 678 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 437 (2021)). And the Ninth Circuit recognized these same risks in affirming this Court's final approval order, noting that "the class's standing rested on questionable footing—there is no evidence that any CPK employee's compromised data was misused, and the hacker group is apparently known for not releasing the information to the dark web once it receives its ransom payment." *In re CPK*, 129 F.4th at 678.

Success at class certification has also been mostly nonexistent in data breach cases.[3] As in any data breach—but especially one of this scope—establishing

---

[3] *See Adkins v. Facebook, Inc.*, No. C 18-05982 WHA, 2019 U.S. Dist. LEXIS 206271, at *691 (N.D. Cal. Nov. 26, 2019) (granting motion to certify injunctive-only class, but denying motion to certify damages and issues classes in data breach

causation and damages on a class-wide basis is an unexplored legal frontier rife with uncertainty. *See, e.g., Franlink, Inc. v. Bace Servs.*, No. 19-cv-4593, 2020 U.S. Dist. LEXIS 256098, at *39 (S.D. Tex. Sep. 24, 2020) (dismissing negligence claim regarding ransomware attack where data security was adequate and the company "remediated its servers and data in a reasonable manner."). And even if this Court would have granted Plaintiffs' hypothetical future motion for class certification, the inherent risks attendant to trying a data breach class action would have only magnified the difficult legal questions at issue here. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2018 U.S. Dist. LEXIS 140137, at *107 (N.D. Cal. Aug. 17, 2018) ("[C]lass certification was not guaranteed, in part because Plaintiffs had a scarcity of precedent to draw on."); *In re Equifax*, 2020 U.S. Dist. LEXIS 118209, at *191. Plaintiffs believe they ultimately would have prevailed, but a defense verdict was entirely possible, as the Ninth Circuit made clear in the opinion it issued in this case. *See In re CPK*, 129 F.4th at 677 ("The *Kirsten* plaintiffs provide no legal authority for their valuation of the CCPA claims and have not rebutted CPK's potential legal defenses against them.").

Furthermore, each Class Counsel chose to represent Plaintiffs on contingency. The attorneys working on the case have foregone the ability to devote time to other cases and faced a substantial risk that the litigation would yield no or very little recovery and leave them uncompensated for their time and out-of-pocket expenses. And, as shown above, there is no question that the risk of nonpayment was substantial. No stage of the proceedings is guaranteed, and with the highlighted

---

class action); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (denying class certification in data breach action); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389 (D. Mass. 2007) (same). *Compare In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 U.S. Dist. LEXIS 71965, at *40 (M.D. Fla. Apr. 14, 2021) ("The Court acknowledges it may be the first to certify a Rule 23(b)(3) class involving individual consumers complaining of a data breach involving payment cards….").

hurdles of overcoming the motion to dismiss and achieving contested certification in this case, not to mention the specter of a potentially groundbreaking trial, it is clear that Settlement Class Members may never have secured relief, financial or otherwise, absent this Settlement. This factor supports Plaintiffs' fee request.

### b.    Class Counsel Obtained an Excellent Result for All Class Members

"The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007). And there can be no doubt that, in this case, Plaintiffs and Class Counsel worked to secure timely and robust relief for the Class to address the potential impact of the Security Incident and right the wrongs underlying this action. In fact, it is in part due to the considerable relief Class Counsel secured that the appellate court deemed the Settlement "fair, reasonable and adequate." *See In re CPK*, 129 F.4th at 670.

Plaintiffs negotiated this Settlement just months after the announcement of the Security Incident. SA ¶ 1. This expedience was intended to allow Defendant to devote its financial resources to affected individuals rather than increasing costs for both sides by engaging in risky and time-consuming litigation. And now, due in no small part to Class Counsel's successful defense of Settlement on appeal, Class Members finally are receiving the long-awaited protection and compensation to which the Settlement entitles them.

Moreover, this Settlement remains an excellent result for the Settlement Class and is in line with or exceeds other settlements in cases involving data breaches of similar scope. *See, e.g. Cochran et al. v. The Kroger Company et al.*, Case No. 5:21-cv-01887-EJD (N.D. Cal.), ECF No. 31 (settlement providing cash payments of less than $100 assuming a 2% claims rate, two years of three bureau credit monitoring, *or* documented loss reimbursement of up to $5,000); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT,

ECF No. 181-2 (March 7, 2016) (Settlement Agreement); *id.*, 2017 U.S. Dist. LEXIS 221736, at *24 (N.D. Ga. Sept. 22, 2017) (order approving data breach settlement which provided approximately $0.51 per class member); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522-PAM, ECF No. 358-1 (D. Minn. March 18, 2015) (Settlement Agreement); *id.*, 2017 WL 2178306, at *1 (D. Minn. May 17, 2017) (order certifying data breach settlement class on remand from the 8th Circuit paying the equivalent of $0.17 per class member). The Ninth Circuit's opinion and order affirming final approval buttresses that conclusion. *See In re CPK*, 129 F.4th at 678. This factor therefore supports the requested fee award.

### c.    Class Counsel Demonstrated the Skill Required to Prosecute this Action Effectively

Class Counsel's skills and experience in complex class action litigation also favor the requested fee award here. The descriptions of the backgrounds of Class Counsel demonstrate that Class Counsel are experienced in the highly specialized field of class action litigation, well credentialed, and equal to the difficult and novel tasks at hand. *See* ECF Nos. 68-2, 68-3, 68-4, 68-5. Class Counsel's fee request is commensurate with that experience, which they leveraged to develop their various complaints, consolidate the actions for the good of the class members, mediate the case, and procure a robust Settlement they defended successfully on appeal. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002).

Class Counsel were also equal to the experience and skill of the lawyers representing Defendant, a factor to be considered here. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-06352 MMM (JCGx) 2014 U.S. Dist. LEXIS 184548, at *72 (C.D. Cal. July 28, 2014) ("In addition to the difficulty of the legal and factual issues raised, the court should also consider the quality of opposing counsel as a measure of the skill required to litigate the case successfully.") (citing *Wing v.*

*Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997)). Defendant was represented in this case by Lewis Brisbois Bisgaard and Smith LLP, a highly respected national law firm with significant resources and substantial experience defending consumer class actions, especially in the cyber security area. Accordingly, this factor weighs in favor of the requested fee award.

### B.    Plaintiffs Also Seek Reimbursement of Reasonable Expenses

"Class Counsel are also entitled to reimbursement of reasonable out-of-pocket expenses." *Stewart v. Apple Inc.*, No. 19-cv-04700-LB, 2022 U.S. Dist. LEXIS 139222, at *21 (N.D. Cal. Aug. 4, 2022). "Such expense awards comport with the notion that the district court may "spread the costs of the litigation among the recipients of the common benefit." *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002).

Class Counsel incurred unreimbursed expenses of $35,468.82 in prosecuting this action. As with counsel's lodestar, all expenses were carefully scrutinized. *Id.* The costs for which Class Counsel seek reimbursement include filing fees, service of process, legal research, travel for court appearances, photocopying and mediation fees. Barney Decl., ¶¶ 10-11; Byrd Decl., ¶¶ 11-12; Herrera Decl., ¶¶ 11-12; Lietz Decl., ¶¶ 16-18. These costs "are typically recoverable." *Metrow v. Liberty Mut. Managed Care LLC*, No. EDCV 16-01133 JGB (KKx), 2018 U.S. Dist. LEXIS 100835, at *34 (C.D. Cal. June 14, 2018) (awarding expenses for "travel, transcripts and expert witness fees.") (citation omitted). The expenses at issue here also are in line with those approved by courts in this District because they are the type "that would typically be billed to paying clients in non-contingency matters." *Sudunagunta v. NantKwest, Inc*., No. CV 16-1947-MWF (JEMx), 2019 U.S. Dist. LEXIS 81337, at *18-19 (C.D. Cal. May 13, 2019) (finding recovery of expenses relating "to necessary travel, filing and service fees, document storage and maintenance fees, printing fees, and other similar costs" appropriate from the

---

settlement fund) (citing *Harris v. Maroefer*, 24 F.3d 16, 19 (9th Cir. 1994)).
Notably, Class Counsel is not seeking any award of the costs associated with the
Ninth Circuit appeal. Plaintiffs' request for reimbursement of litigation costs and
expenses in the amount of $35,468.82 is therefore reasonable.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request the Court enter
an order approving Class Counsel's modified request for a combined fee and
expense award in the amount of $292,086.06.

Dated:  May 5, 2025

WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP

*/s/ Rachele R. Byrd*
    RACHELE R. BYRD

RACHELE R. BYRD (190634)
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
byrd@whafh.com

**SIRI & GLIMSTAD LLP**
MASON BARNEY (*pro hac vice*)
200 Park Avenue, Seventeenth Floor
New York, NY 10166
Telephone: 212-532-1091
Facsimile: 646-417-5967
mbarney@sirillp.com

DANIEL O. HERRERA (*pro hac vice*)
**CAFFERTY CLOBES MERIWETHER
  & SPRENGEL LLP**
135 S. LaSalle, Suite 3210
Chicago, Illinois 60603
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com

DAVID K. LIETZ (*pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
5335 Wisconsin Avenue NW, Suite 440
Washington, D.C. 20015-2052

1

2

Telephone: (866) 252-0878
Facsimile: (202) 686-2877
dlietz@milberg.com

3

4

*Clas Counsel and Attorneys for Plaintiffs*

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>STATEMENT OF COMPLIANCE WITH L.R. 11-6.2</u>

The undersigned, counsel of record for Plaintiffs and Class Counsel, certifies that this brief contains 5,570 words, which complies with the word limit of L.R. 11-6.1.

Dated:  May 5, 2025

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**

*/s/ Rachele R. Byrd*
RACHELE R. BYRD
